739 P.2d 1345

**MOHAVE CONCRETE AND MATERI-ALS, INC., an Arizona Corporation,** Plaintiff-Appellee,

v.

**Angee SCARAMUZZO,** Defendant-Appellant.

**No. 1 CA–CIV 9124.**

Court of Appeals of Arizona, Division 1, Department B.

June 18, 1987.

Reconsideration Denied Aug. 5, 1987.

Paul Lenkowsky, Bullhead City, for plaintiff-appellee.

Leek & Petica by Ronald H. Petica, Terrence S. Leek, Bullhead City, for defendant-appellant.

## OPINION

JACOBSON, Presiding Judge.

Does the failure of a defendant to replead or counterclaim in response to an amended complaint invalidate the defendant's previously pled counterclaim? This is the main issue we consider in this appeal. We also consider whether the plaintiff, who performed work on the defendant's property in preparation for condominium construction, should have been licensed as a contractor pursuant to Laws 1981, ch. 221, § 2 (current version at A.R.S. § 32–1101(A)(2)(a)).

In June 1983, plaintiff-appellee, Mohave Concrete and Materials, Inc. (Mohave Concrete) filed a complaint against defendants-appellants, Angee Scaramuzzo and his wife (Scaramuzzo) for breach of contract. Scaramuzzo owned property in Bullhead City, Arizona, which was zoned A–R, Argicultural Residential. Quinto Polidori, the president of Mohave Concrete, testified that in connection with the construction of proposed residential condominiums, Scaramuzzo asked him to level Scaramuzzo's property and to cut condominium pads and a street. Mohave Concrete alleged that Scaramuzo owed $40,722 for work performed, including architectural drawings of the condominiums.

In his answer, Scaramuzzo included a counterclaim against Mohave Concrete for trespass on the property and conversion of sand and gravel from the property. The trial court permitted Scaramuzzo to join Quinto and Veronica Polidori (Polidori) as parties to the counterclaim, pursuant to

Rule 20(a), Arizona Rules of Civil Procedure.

In January 1985, the trial court permitted Mohave Concrete to amend its complaint and add a claim for quantum meruit. In his answer to the amended complaint, Scaramuzzo did not replead his counterclaim. On the first day of trial, Mohave Concrete, for the first time, sought a ruling from the trial court to preclude Scaramuzzo from introducing any evidence on the counterclaim on the basis that the counterclaim had been abandoned. It was argued that the counterclaim was abandoned because Scaramuzzo had not repled the counterclaim in its answer to Mohave Concrete's amended complaint. Scaramuzzo argued that, as a matter of law, no abandonment for failure to replead had occurred, but, in any event, since no prejudice occurred, he should be allowed to amend his answer to include the counterclaim. The trial court granted Mohave Concrete's motion to strike the counterclaim and denied Scaramuzzo's motion to amend the answer.

At the close of Mohave Concrete's case, Scaramuzzo moved for a directed verdict on the ground that Mohave Concrete failed to prove that it was duly licensed to perform the construction work undertaken. The trial court denied this motion. The matter proceeded to trial before a jury which returned a verdict in favor of Mohave Concrete in the sum of $40,000.00. Scaramuzzo has appealed, contending that his counterclaim was improperly striken and that because of Mohave Concrete's failure to have a proper contractor's license, it could not maintain this action.

## ABANDONMENT OF THE COUNTERCLAIM

The trial court's conclusion that the counterclaim was abandoned was based upon its reading of *Campbell v. Deddens*, 21 Ariz. App. 295, 518 P.2d 1012 (1974). In *Campbell*, the question was whether a motion for change of venue directed to a count contained in an amended complaint was timely. In holding that the motion was timely the court held:

When respondent filed an amended complaint, such pleading superseded his original complaint which then became *functus officio* [citations omitted]. Since the amended complaint took the place of the original, all subsequent pleadings are based on the amended complaint [citations omitted]. Consequently, petitioner's answer to the amended complaint became his first responsive pleading to the merits of respondent's claim even though petitioner had responded to the original complaint [citations omitted].

21 Ariz.App. at 297, 518 P.2d at 1014.

The doctrine that an amended complaint and an answer to an amended complaint supersede the original complaint and the original answer does not answer the question of whether an answer to an amended complaint would supersede any counterclaims contained in the original answer.

■ The purpose of the *Campbell* rule is to ensure, for example, that a plaintiff may not pursue two complaints in the same action. As stated by the Connecticut Supreme Court, "[b]ecause two complaints cannot coexist in the same action, the filing of a substituted or amended complaint must of necessity remove the original pleading from the file." *Nowak v. Nowak*, 175 Conn. 112, 118, 394 A.2d 716, 719 (1978). Similarly, the *Campbell* rule ensures that a plaintiff can proceed based on a defendant's one answer.

■ However, these purposes are not served by holding that an amended answer to an amended complaint supersedes a totally separate and distinct counterclaim. Here, the counterclaim was not amended, nor was the reply to that counterclaim amended. Accordingly, we hold that Scaramuzzo's answer to the amended complaint did not supersede Scaramuzzo's counterclaim.

■ Mohave Concrete next argues that because Scaramuzzo's counterclaim was "compulsory" under Rule 13(a), Rules of Civil Procedure, it must be replaced in response to the amended complaint. Rule 13(a) provides in part that:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .

Mohave Concrete's argument is that because the amended complaint superseded the original complaint, a compulsory counterclaim must be repled in order to have something to respond to and comply with Rule 13(a). We disagree.

■ The purpose of compulsory counterclaims is to avoid multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of the same subject matter. *O'Brien v. Scottsdale Discount Corp.*, 14 Ariz.App. 224, 482 P.2d 473 (1971). Rule 13(a) accomplishes this purpose by requiring that the pleadings in a single lawsuit encompass all the claims of all the parties which fall within the requirements of that rule. We have previously held that *Campbell* does not require a repleading of the counterclaim. Likewise, we cannot see how the purpose of Rule 13(a) would be served by requiring repleading.

Mohave Concrete's reliance upon *Biebelle v. Norero*, 85 N.M. 182, 510 P.2d 506 (1973), holding that a defendant should replead his counterclaim in his answer to an amended complaint is not persuasive. The decision in *Biebelle* is based upon a New Mexico rule of procedure, not applicable in Arizona. The rule in New Mexico provides:

In every complaint, answer or reply, amendatory or supplemental, the party shall set forth in one entire pleading all matters which by the rules of pleading, may be set forth in such pleading, and which may be necessary to the proper determination of the action or defense.

N.M.Stat.Ann. § 1–015(E) (1986). As stated by the New Mexico Supreme Court, "[i]ts purpose was doubtless to prevent surprise and prejudice . . . and to serve the convenience of court, counsel and litigants by avoiding the necessity of rummaging through the court files to discover operative pleadings scattered about therein." 85 N.M. at 184, 510 P.2d at 508.

■ We therefore hold that the trial court committed error in precluding Scaramuzzo from presenting evidence as to his counterclaim against Mohave Concrete and its officers, Quinto Polidori and Veronica Polidori. Since we find that the trial court erroneously ruled on this issue, we do not reach the issue of whether the trial court abused its discretion in denying Scaramuzzo's motion to amend.

## CONTRACTING WITHOUT A LICENSE

As previously indicated, Scaramuzzo moved for a directed verdict on the basis that Mohave Concrete's action was barred by A.R.S. § 32–1153, which provides:

No contractor as defined in § 32–1101 shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

A contractor is defined to include a person who "undertakes to ... [c]onstruct ... any residential structure":

For the purposes of this chapter, 'contractor' is synonymous with the term 'home builder' and means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, within residential property lines:

1. Construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any residential structure, such as houses, townhouses, condominiums or cooperative units, and apartment complexes of not more than four units, including appurtenances.

Laws 1981, ch. 221, § 2 (current version at A.R.S. § 32–1101(A)(2)(a)).

■ Mohave Concrete argues that it does not fall within the prohibitions of A.R.S. § 32–1153, because the work it performed in leveling the property did not constitute construction of "any residential structure." [1] In particular, it contends:

the mere fact that someone, someday, may construct a residential structure on the property owned by Appellant, does not give rise to a finding that Appellee was acting as a contractor within the meaning of § 32–1101 when it leveled and graded vacant land devoid of any residential structures.

We disagree. A person undertakes residential construction, within the meaning A.R.S. § 32–1101, when he levels property with the intention of preparing the property for residential construction. *Cf. Matison v. Barassi,* 118 Ariz. 538, 541, 578 P.2d 619, 622 (App.1978) ("He argues that 'undertake' contemplates a situation where work is begun for the benefit of another and since his initial intent was to do the work himself and not to reconstruct the building for Matison for compensation, he cannot be deemed a 'contractor' within the meaning of A.R.S. § 32–1101") *appeal after remand, Barassi v. Matison,* 134 Ariz. 338, 341, 656 P.2d 627, 630 (App.1982) ("The record shows that Barassi did not originally commence the improvements with the intention of selling or renting the property"). Quinto Polidori repeatedly testified that he leveled the property with the intention of preparing the property for the construction of condominiums. To assist in the leveling, Quinto Polidori even hired an architect to prepare plans for the "Hidden Valley Views Condominium Complex" and sought reimbursement for this cost. There is no contention that these plans did not ultimately call for residential habitation. Under these circumstances, Mohave Concrete was required to hold a contractor's

1. Mohave Concrete did hold a C–9 concrete license which allows "grading in connection with concrete construction." A.C.R.R. R4–9–03 (1980). There is no contention that the leveling performed here was in connection with concrete construction. Nor is there any contention that if a license was required to perform the leveling work, Mohave Concrete held such a license.

**32**

license in order to perform the work involved.

Mohave Concrete's failure to plead and prove the existence of the requisite contractor's license at the time the work was performed precludes it from maintaining an action for compensation for such work. A.R.S. § 32–1153. Because of this holding, we do not reach Scaramuzzo's contention that the trial court erred in refusing a continuance because of alleged discovery abuses.

Mohave Concrete's request for attorney's fees is denied. We grant Scaramuzzo's request for attorneys' fees, pursuant to A.R.S. § 12–341.01 and Rule 21, Arizona Rules of Civil Appellate Procedure.

The judgment entered is reversed and the matter is remanded for an adjudication on the merits of Scaramuzzo's counterclaim against Mohave Concrete and Polidori. The trial court is directed to enter judgment for Scaramuzzo on Mohave Concrete's amended complaint.

HAIRE and GREER, JJ., concur.